Filed 9/25/24

**CERTIFIED FOR PARTIAL PUBLICATION\***

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | B332566 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. SA031833) |
| v. | |
| GLENN MASON, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, William L. Sadler and Bernard J. Kamins, Judges.  Order affirmed; judgment modified with directions.

William L. Heyman, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior

---

**\*** Pursuant to California Rules of Court, rules 8.1105 and 8.1110, only the Introduction, the first part under Facts and Procedural History subtitled "Mason's Murder Conviction," part 4 of the Discussion, and the Disposition are certified for publication.

Assistant Attorney General, Noah P. Hill and Steven E. Mercer, Deputy Attorneys General, for Plaintiff and Respondent.

## INTRODUCTION

Glenn Mason was sentenced to life in prison without the possibility of parole (LWOP) for a special circumstance murder he committed in 1998, when he was 20 years old. The trial court doubled his LWOP sentence under the Three Strikes Law. Two decades later, the court denied Mason's request for a hearing under *People v. Franklin* (2016) 63 Cal.4th 261 (*Franklin* hearing). *Franklin* offers inmates eligible for youth offender parole an opportunity to make a record of youth-related mitigating evidence relevant to a future parole hearing.

The court properly denied a *Franklin* hearing. Mason was over 18 when he committed a murder warranting an LWOP sentence: He is statutorily ineligible for youth offender parole. (Pen. Code, § 3051, subd. (h).)[1] Section 3051 does not violate constitutional guarantees of equal protection by deeming special circumstance murderers more culpable than other offenders, or by differentiating between adult and juvenile offenders sentenced to LWOP. Further, section 3051 does not violate the proscription on cruel or unusual punishment by excluding inmates who are over age 18 from youth offender parole if they commit heinous crimes warranting LWOP. (Cal. Const., art. I, § 17.) There is a rational basis for the legislative exclusions.

In a published section of this opinion, we overrule our decision in *People v. Hardy* (1999) 73 Cal.App.4th 1429, which misinterpreted the Three Strikes Law. We hold that section 667, subdivision (e)(1) did not allow the trial court to double a

---

[1] Undesignated statutory references are to the Penal Code.

2

sentence of LWOP.  We modify the sentence on Mason's first degree murder conviction to impose a single term of life without the possibility of parole.  In all other respects, we affirm.

## FACTS AND PROCEDURAL HISTORY

### Mason's Murder Conviction

Mason was charged with murder, with the special circumstance of lying in wait.  (§§ 187, subd. (a), 190.2, subd. (a)(15).)[2]  In 1999, a jury convicted Mason of first degree murder and found true that he was lying in wait.  The trial court found true that he had a 1996 arson conviction.

The court denied Mason's request to strike the special circumstance allegation and imposed an LWOP sentence.  It doubled the LWOP sentence under the Three Strikes Law and added five years for the prior serious felony conviction.  (§§ 667, 1170.12.)  The court dismissed a count of receiving stolen property and an allegation that Mason used a deadly weapon.

This court affirmed the judgment.  We wrote that Mason planned to commit murder as part of his satanic beliefs.  Before the February 1998 killing, he told others he intended to kill a girl he occasionally dated.  The day of the killing, he told the 14-year-old victim, "You know, I'm going to kill you."  When she came to a building where he lived, Mason tied her to a chair, then tased and strangled her.  He was "ecstatic" about the killing and planned to show off the body as a trophy.  Police found the body hidden in a basement, on top of a strap resembling a dog leash, with chains and duct tape on her limbs and neck; she was

---

[2] The amended information states that Mason was born on November 6, 1975.  At his request, we take judicial notice that his birth certificate shows a birthdate of November 6, 1977.  It also shows that his birth name is Glenn Mason, Jr.

asphyxiated by ligature strangulation.  Apart from striking a parole revocation fine, we found no reversible error.  (*People v. Mason* (Feb. 20, 2001, B135025) [nonpub. opn.].)

## Mason's Petition

In 2023, Mason petitioned in propria persona for a *Franklin* hearing "to make a record of mitigating evidence tied to his youth."  He cited a Court of Appeal decision holding that section 3051 violates equal protection by excluding persons aged 18 to 25, who are sentenced to LWOP, from youth offender parole.[3]  He also argued that the statute violates the state constitutional ban on cruel or unusual punishment.

## The Trial Court's Ruling

The court emphasized that Mason was convicted of murder while lying in wait.  The special circumstance shows greater culpability and is a rational basis for the Legislature to exclude those sentenced to LWOP from youth offender parole.  His equal protection claim is not supported by the weight of authority.  Because Mason committed a special circumstance murder, section 3051 does not authorize a *Franklin* hearing.  Mason appealed the court's denial of his petition.  (§ 1237, subd. (b).)

## DISCUSSION

### 1.  Statutory Ineligibility for a Youth Offender Parole Hearing

A youth offender parole hearing is held by the Board of Parole Hearings to review parole suitability of a prisoner who was 25 years old or younger at the time of the offense.  (§ 3051, subd. (a)(1).)  The statute *does not apply* "to cases in which an

---

[3] The case, *People v. Hardin* (2022) 84 Cal.App.5th 273, was reversed in *People v. Hardin* (2024) 15 Cal.5th 834 (*Hardin*).

4

individual is sentenced to life in prison without the possibility of parole for a controlling offense that was committed after the person had attained 18 years of age." (§ 3051, subd. (h).) And it "categorically excludes" those sentenced under the Three Strikes Law. (*People v. Sands* (2021) 70 Cal.App.5th 193, 199 (*Sands*).)

Mason is ineligible for a youth offender parole hearing: He was sentenced to LWOP for a murder committed when he was over 18 years old. (§ 3051, subd. (h).) Because he is statutorily ineligible for a parole suitability hearing, Mason is not entitled to a *Franklin* hearing to develop a record of mitigating youthful circumstances. (*Sands, supra,* 70 Cal.App.5th at p. 197.)

**2.** **Excluding Youthful Offenders Sentenced to LWOP Is Not an Equal Protection Violation**

Mason believes he "is similarly situated . . . to persons with non-LWOP sentences" who commit first degree murder before age 26 and are entitled to a youth offender hearing under section 3051. He also claims to be "similarly situated to persons with LWOP sentences who committed their controlling offenses before they were 18 years old and thus are entitled under section 3051 . . . to a youth offender parole hearing at some point."

Appellant concedes it is "no longer relevant for this appeal" to determine if he is similarly situated. Our Supreme Court recently held that "when plaintiffs challenge laws drawing distinctions between identifiable groups or classes of persons, . . . courts no longer need to ask at the threshold whether the two groups are similarly situated . . . . The only pertinent inquiry is whether the challenged difference in treatment is adequately justified." (*Hardin, supra,* 15 Cal.5th at pp. 850–851.) The court considers if a statutory classification bears a rational relationship to a legitimate state purpose; the challenger must demonstrate

5

that "no rational basis . . . is reasonably conceivable." (*People v. Chatman* (2018) 4 Cal.5th 277, 289; *Hardin*, at p. 852.)

Mason argues that there is no rational basis for treating young adult murderers sentenced to LWOP differently from offenders who receive life sentences. He reasons that the "special circumstance involved, such as lying in wait, does not change the fundamental element of extinguishing a human life."

Our Supreme Court has rejected this reasoning, observing that "special circumstance murder is a uniquely serious offense, punishable only by death or life without possibility of parole." (*Hardin, supra,* 15 Cal.5th at p. 839.) "[T]he Legislature could rationally balance the seriousness of the offender's crimes against the capacity of all young adults for growth, and determine that young adults who have committed certain very serious crimes should remain ineligible for release from prison." (*Ibid.*) Section 3051 does not violate equal protection by distinguishing between young adults who are *not* sentenced to LWOP and those who are because it rationally "assigns significance to the nature of underlying offenses and accompanying sentences." (*Id.* at p. 855.) *Hardin* forecloses Mason's first challenge to section 3051. Someone who commits a murder with special circumstances is, in fact, more culpable than someone who does not.

Next, Mason asserts that the Legislature cannot justifiably treat offenders over age 18 differently from offenders under 18, when both are sentenced to LWOP. Offenders under age 18 who are sentenced to LWOP are eligible for parole at a youth offender hearing in their 25th year of incarceration; by contrast, offenders over 18 are never eligible. (§ 3051, subds. (b)(4), (h).)

Case law does not support an argument that juveniles and young adults must be treated the same way. "[C]hildren are

constitutionally different from adults for purposes of sentencing." (*Miller v. Alabama* (2012) 567 U.S. 460, 471 [132 S.Ct. 2455; 183 L.Ed.2d 407].)  Children may lack maturity and a sense of responsibility, be reckless, impulsive, or susceptible to malign influence.  (*Ibid.*; *Hardin, supra,* 15 Cal.5th at p. 844.)  Age 18 is where "society draws the line" between childhood and adulthood: Offenders over 18 are eligible for the death penalty.  (*Roper v. Simmons* (2005) 543 U.S. 551, 574 [125 S.Ct. 1183; 161 L.Ed.2d 1]; *People v. Tran* (2022) 13 Cal.5th 1169, 1234.)

We agree with cases holding that section 3051 does not violate equal protection by treating juveniles differently from adult offenders.  "The Legislature had a rational basis to distinguish between offenders with the same sentence (life without parole) based on their age."  (*Sands, supra,* 70 Cal.App.5th at p. 204; accord, *People v. Jackson* (2021) 61 Cal.App.5th 189, 196–198; *In re Murray* (2021) 68 Cal.App.5th 456, 463–464; *People v. Morales* (2021) 67 Cal.App.5th 326, 347; *In re Williams* (2020) 57 Cal.App.5th 427, 436.)  The Legislature is not constitutionally required to include young adults ages 18 to 25 in section 3051; in choosing to do so, the Legislature may make a rational policy choice to exclude from parole those who commit the most aggravated offenses.  (*People v. Williams* (2024) 17 Cal.5th 99, 127–128.)

LWOP applies to " 'crimes the Legislature deems so morally depraved and so injurious as to warrant a sentence that carries no hope of release for the criminal and no threat of recidivism for society.' "  (*People v. Acosta* (2021) 60 Cal.App.5th 769, 780.)  When the Legislature mandates the harshest penalty for the most heinous crimes, equal protection analyses do not allow us to undermine the Legislature's "constitutionally sufficient basis for

distinguishing juvenile LWOP offenders from young adult LWOP offenders" by second-guessing the " ' "wisdom, fairness, or logic" ' " of the law.  (*Ibid.*)

In light of *Hardin*, *supra,* 15 Cal.5th 834, and the other authorities cited above, there is no basis to invalidate section 3051 based on a claimed equal protection violation.  It is not irrational for the Legislature to deny parole to persons over age 18 who commit crimes leading to an LWOP sentence.  "A person guilty of murder with special circumstances is the worst of the worst.  This is the most heinous crime known to our Penal Code, and one of the few crimes subject to the death penalty in California."  (*People v. Ngo* (2023) 89 Cal.App.5th 116, 123.)

### 3.  Cruel or Unusual Punishment Claim

Our Constitution bans cruel or unusual punishment.  (Cal. Const., art. I, § 17.)  It is violated when punishment is so disproportionate to the crime " ' "that it shocks the conscience and offends fundamental notions of human dignity." ' "  (*People v. Cole* (2004) 33 Cal.4th 1158, 1235.)  This standard also applies to the federal Eighth Amendment prohibition on cruel and unusual punishment.  (*Ewing v. California* (2003) 538 U.S. 11, 21 [123 S.Ct. 1179; 155 L.Ed.2d 108] [apart from death sentences, " 'grossly disproportionate' " punishment claims rarely succeed].)

Mason argues that the Legislature deems youthful offenders less culpable, if they commit violent offenses before age 26.  In his view, an LWOP sentence imposed on anyone between the age of 18 and 25 offers no hope for a parole hearing and is therefore grossly disproportionate to the crime.

Case law describes what is "disproportionate."  It is not disproportionate to impose LWOP for a murder committed when a defendant was 17 if the crime shows irreparable corruption

8

rather than transient immaturity. (*People v. Watson* (2017) 8 Cal.App.5th 496, 513–515.) Significantly, it is constitutional to impose a *death* sentence for murder committed by offenders ages 18 to 21. (*People v. Flores* (2020) 9 Cal.5th 371, 429–430; *People v. Gamache* (2010) 48 Cal.4th 347, 404–405.)

If a death sentence may be imposed on someone aged 18 to 21, it is not disproportionate to impose a lesser sentence of LWOP on Mason, who was 20 when he committed murder. (*In re Williams, supra,* 57 Cal.App.5th at p. 439.) Mason's punishment did not become cruel or unusual merely because the Legislature denies parole hearings to inmates over 18 who are sentenced to LWOP for a special circumstance murder. There is no real dispute "that the Legislature acted reasonably in distinguishing [in section 3051] between offenses committed before and after the age of 18 because the Eighth Amendment (and the law more generally) makes the same distinction." (*Hardin, supra,* 15 Cal.5th at p. 846.) When the Legislature and the courts draw the line for leniency at age 18, we must respect it. (*People v. Montelongo* (2020) 55 Cal.App.5th 1016, 1031–1032.)

## 4. Doubled LWOP Sentence

The Three Strikes Law requires courts to double the sentence for a serious or violent felony if it is the defendant's second such conviction. (§§ 667, subd. (e)(1).)[4] Mason argues that doubling his LWOP sentence is not authorized by this

---

[4] "If a defendant has one prior serious or violent felony conviction . . . that has been pled and proved, the determinate term or minimum term for an indeterminate term shall be twice the term otherwise provided as punishment for the current felony conviction." (§ 667, subd. (e)(1).)

statute.  We agree.  In doing so, we overrule our decision in *People v. Hardy, supra,* 73 Cal.App.4th 1429 (*Hardy*).

A sentence unauthorized by the Penal Code may be corrected whenever the error is brought to a reviewing court's attention.  (*People v. Rowland* (1988) 206 Cal.App.3d 119, 126; *People v. Davis* (1981) 29 Cal.3d 814, 827, fn. 5 ["imposition of a sentence for which there is no statutory authority is jurisdictional error"]; *People v. Vizcarra* (2015) 236 Cal.App.4th 422, 431–436.)  A sentence is " 'unauthorized' where it could not lawfully be imposed under any circumstance."  (*People v. Scott* (1994) 9 Cal.4th 331, 354.)

Respondent does not dispute our ability to correct Mason's sentence, if it was unauthorized.  Instead, the People argue that doubling his LWOP sentence was proper.

There is a split of authority on the proper treatment of an LWOP sentence if there are prior serious and/or violent felony convictions.  In *Hardy,* this Division determined that doubling an LWOP term fulfills the Legislature's and the voters' intent to ensure longer prison terms for those with prior "strikes."  (*Hardy, supra,* 73 Cal.App.4th at p. 1433.)  No published case has followed this reasoning.

A current majority of cases offer an opposing view, holding that it is improper to double an LWOP sentence under the Three Strikes Law.  *People v. Smithson* (2000) 79 Cal.App.4th 480 (*Smithson*), *People v. Mason* (2014) 232 Cal.App.4th 355 (*Mason*), and *People v. Coyle* (2009) 178 Cal.App.4th 209 (*Coyle*) recognize that the statutory language allows doubling (due to one prior "strike") of (1) the "determinate term" or (2) the "minimum term for an indeterminate term."  (§ 667, subd. (e)(1).)

The cited cases conclude that neither aspect of section 667, subdivision (e)(1) exists when LWOP is imposed.  LWOP "is an

indeterminate sentence *without* a minimum term." (*Smithson, supra,* 79 Cal.App.4th at p. 503; *Coyle, supra,* 178 Cal.App.4th at p. 219.) "A sentence of life imprisonment without parole does not have . . . a minimum term because it does not allow for parole." (*Mason, supra,* 232 Cal.App.4th at p. 368.) As a result, the statutory mandate to double sentences does not apply to LWOP. There is no reason to consider the legislative intent behind the Three Strikes Law because the statutory language "is clear and unambiguous." (*Smithson*, at pp. 503–504.)

As between the two lines of authority, we conclude that the majority rule is better reasoned and consistent with the language of section 667, subdivision (e)(1), which "nowhere, expressly or implicitly, double[s] indeterminate terms." (*Smithson, supra,* 79 Cal.App.4th at p. 504.) Accordingly, we disavow *Hardy*.

Respondent cites two cases as support for *Hardy,* neither of which involve LWOP terms. In *People v. Jefferson* (1999) 21 Cal.4th 86, 90, the defendants were sentenced to life in prison for attempted murder. The court wrote that "a defendant sentenced to life imprisonment *with the possibility of parole*" must serve at least seven years before becoming eligible for parole under section 3046, the " 'minimum period of confinement.' " (*Id.* at p. 96, italics added.) Section 3046 applies to "[a]n inmate imprisoned under a life sentence." Similarly, in *People v. Miranda* (2011) 192 Cal.App.4th 398, 414, the defendant was sentenced to 59 years to life for attempted murder. *Jefferson* and *Miranda* are inapposite because they involved parole-eligible offenders.

Respondent notes that our Supreme Court upheld a death sentence and three LWOP sentences against one defendant who committed four murders in *People v. Sandoval* (1992) 4 Cal.4th

11

155, 197.  The court wrote, "A defendant who kills more than one person may be convicted and punished for each murder."  (*Ibid.*; see also *People v. Acosta, supra,* 60 Cal.App.5th at p. 782 [defendant killed three people and received LWOP sentences for each offense]; *People v. Bonin* (1988) 46 Cal.3d 659, 668 [four death penalties imposed for four murders].)  A defendant may indeed receive separate LWOP sentences for multiple murders; however, Mason committed one murder qualifying for LWOP.

*Hardy* states that doubling an LWOP sentence is advisable because there " 'is a remote but real possibility that one or another of the sentences might be commuted by the governor' " so multiple LWOP sentences " 'will ensure that a defendant will still serve an LWOP sentence' " if one sentence is commuted.  (*Hardy, supra,* 73 Cal.App.4th at pp. 1433–1434.)

For this proposition, *Hardy* cites *People v. Garnica* (1994) 29 Cal.App.4th 1558.  The defendant in *Garnica*, who murdered two people outside a convenience store, challenged the validity of his sentence to two LWOP terms, one for each victim.  (*Id.* at pp. 1559–1560.)  The court upheld concurrent LWOP terms—even if the defendant can effectively serve only one of them—citing its concern that one sentence "might be commuted by the governor"; in that event, the defendant must still serve LWOP for the second murder.  (*Id.* at p. 1564.)  The reasoning in *Garnica* does not apply to a single murder:  If appellant's sentence were to be commuted by the governor, he would not remain in prison to serve a doubled version of the commuted sentence.

The People contend that *Hardy*, as a decision of this court, is stare decisis.  Stare decisis " 'does not " 'shield court-created error from correction' " ' but 'permits us "to reconsider, and ultimately to depart from, our own prior precedent in an

12

appropriate case." ' "  (*Hardin, supra,* 15 Cal.5th at p. 850.) Although a court usually should follow its own precedent, particularly if it involves statutory construction, "sometimes it is appropriate to overrule a prior precedent, even precedent interpreting a statute," if there is "good reason" to do so. (*Bourhis v. Lord* (2013) 56 Cal.4th 320, 327.)

Here, we find such good reason—chiefly, that *Hardy* was decided without the benefit of reasoning set forth in later cases. Overruling *Hardy* harmonizes the law in California and brings uniformity (and hence certainty) to the law on this issue.  We conclude that appellant's LWOP sentence cannot be doubled under section 667, subdivision (e)(1).

## DISPOSITION

The order denying Mason's petition is affirmed.  We modify the sentence on Mason's first degree murder conviction to impose a single term of life without the possibility of parole.  The trial court is directed to prepare an amended abstract of judgment and provide it to the Department of Corrections and Rehabilitation.

CERTIFIED FOR PARTIAL PUBLICATION.**\***

LUI, P. J.

We concur:


ASHMANN-GERST, J.


HOFFSTADT, J.

---

**\*** See footnote, *ante*, page 1.